**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHERYL MARTIN**                                             **CIVIL ACTION**


**VERSUS**                                                   **No.  06-5108**


**LAFON NURSING FACILITY OF THE**                            **SECTION: I/4**
**HOLY FAMILY, INC.**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion filed on behalf of defendant, Lafon Nursing Facility of the

Holy Family, Inc., to set aside a ruling of the United States Magistrate Judge requiring the

production of privileged information allegedly needed by plaintiff's counsel to support a motion

to remand the case to state court.  For the following reasons, defendant's motion is **DENIED**.


*BACKGROUND*

Defendant is the owner and operator of a nursing home located in New Orleans,

Louisiana.  Plaintiff alleges that when Hurricane Katrina struck the New Orleans area on August

29, 2005, defendant failed to take the necessary precautions needed to protect plaintiff's mother

and other residents of the home from the storm's effects.[1]  Plaintiff alleges that, because of

defendant's negligence, her mother suffered mentally and physically during the storm and died

on defendant's premises.[2]

Defendant removed this case to federal court[3] pursuant to the Class Action Fairness Act

("CAFA"), 28 U.S.C. § 1332(d)(2).[4]  Plaintiff then moved to remand the case to state court

pursuant to CAFA's "local controversy" exception, 28 U.S.C. § 1332(d)(4), which provides a

mandatory exception to federal jurisdiction.[5]  This Court denied the motion to remand, finding

that plaintiff had not produced sufficient evidence to show that the local controversy exception

was applicable.  The Court wrote that "[t]he burden of proving the local controversy exception to

. . . CAFA clearly rests with plaintiff" and that "[p]laintiff is free to move for remand if and

when the appropriate information relevant to subject matter jurisdiction becomes available."[6]

On April 30, 2007, plaintiff filed a motion to compel defendant's response to her

discovery requests regarding the residency of the proposed class.  Defendant argued that the

information that plaintiff sought is protected under the Louisiana health care provider-patient

privilege.  Plaintiff contended that federal common law, which does not recognize a health care

provider-patient privilege, governs the privileges applicable in this case.  Plaintiff further argued

---

[1]Rec. Doc. No. 1-2, p. 2.

[2]Rec. Doc. No. 1-2, p. 2 ¶XI.

[3]Rec. Doc. No. 1, p. 3.

[4]The proposed plaintiff class includes residents and visitors of Lafon at the time of the hurricane and their next of kin.

[5]Rec. Doc. No. 3-2, p. 2.  A component of this section requires that more than two-thirds the proposed plaintiff class must be citizens of the state in which the action was first filed.  *See* § 1332(d)(4)(A)(i)(I).

[6]Rec. Doc. No. 29, p. 8.

that this information is necessary to determine whether this court has subject matter jurisdiction pursuant to CAFA.  Plaintiff advised the Court that she is requesting no medical information at this time, only "billing information and/or last known addresses of patients who were at Defendant's facility" during the relevant period.[7]

On May 22, 2007, Magistrate Judge Roby issued an order granting plaintiff's motion to compel discovery responses.[8]  Judge Roby reasoned that "jurisdiction is based on both diversity and federal question," but that the motion before the Court concerned only the "applicability of a federal statute not requiring analysis of state law" and that, therefore, federal law governs whether a privilege applies.[9]  Judge Roby reasoned that because federal common law does not recognize a health care provider-patient privilege, the requested information was not privileged. Judge Roby then created a plan whereby both parties would submit questions to be forwarded to the potential class.[10]

On June 5, 2007, defendant filed a motion to set aside Judge Roby's ruling.[11]  Defendant argues that this ruling should be set aside because Judge Roby was incorrect in identifying the basis for jurisdiction and, therefore, she incorrectly applied federal common law regarding the privilege issue as opposed to the relevant state privilege.[12]  Plaintiff contends that Judge Roby's ruling correctly identified the jurisdictional basis of this lawsuit as both federal question and

---

[7]Rec. Doc. No. 39-2, p. 2.

[8]Rec. Doc. No. 52, p. 6.

[9]Rec. Doc. No. 52, pp. 4-5.

[10]Rec. Doc. No. 52, pp. 5-6.

[11]Rec. Doc. No. 57, p. 1.

[12]Rec. Doc. No. 56-2, p. 6.

diversity jurisdiction and, therefore, Judge Roby correctly applied federal common law.[13]
Plaintiff further asserts that even if the state privilege is appropriate, its application would not
bar discovery of the requested information.[14]

## *LAW AND ANALYSIS*

### I. Standard of Law

The Federal Magistrates Act confers authority for magistrate judges to hear and
determine any civil non-dispositive pre-trial matter.  28 U.S.C. § 636(b)(1)(A).  Generally,
matters concerning discovery are non-dispositive of the litigation.  *See, e.g. Merritt v. Int'l Blvd.
of Boilermakers*, 649 F.2d 1013, 1018 (5th Cir. 1981).  District courts apply the "clearly
erroneous or contrary to the law" standard of review to non-dispositive rulings by a magistrate.
Fed. R. Civ. P. 72(a).  The party challenging the magistrate judge's action in a non-dispositive
matter has the burden of "showing that the Magistrate's ruling was clearly erroneous or contrary
to law."  *Granito v. Sunn*, 594 F. Supp. 410, 413 (D. Haw. 1984), *cited in Bradford v. A&P*, No.
04-1663, 2005 U.S. Dist. LEXIS 36464, at *2 (E.D. La. Nov. 16, 2005).

### II.  Discussion

The applicability of evidentiary privileges in federal court is governed by Rule 501 of the
Federal Rules of Evidence, which provides that

> [e]xcept as otherwise required by the Constitution of the United States or
> provided by Act of Congress or in rules prescribed by the Supreme Court
> pursuant to statutory authority, the privilege of a witness, person, government,
> State, or political subdivision thereof shall be governed by the principles of the
> common law as they may be interpreted by the courts of the United States in the
> light of reason and experience.  However, in civil actions and proceedings, with

---

[13]Rec. Doc. No. 60, p. 3.

[14]Rec. Doc. No. 60, pp. 3-4.

respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In this Circuit, this rule has been interpreted to require the application of state privilege laws when a district court sits in diversity, *Miller v. Transamerican Press*, 621 F.2d 721, 724 (5th Cir. 1980), and federal privilege law when the case presents a federal question, *C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co.*, No. 97-2770, 1998 U.S. Dist. LEXIS 10580, at *6 n.1 (E.D. La. Jul. 12, 1998) (Clement, J.). *See also In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 n.3 (5th Cir. 1998).

In finding that federal privilege law applied to this matter, Judge Roby wrote:

> Courts have interpreted this to mean that "Rule 501 makes it clear that state privilege law will apply in diversity cases, and that federal privilege law will apply in federal question cases." *In re Combustion, Inc.*, 161 F.R.D. 51, 53 (W.D. La. 1995). In this case, however, jurisdiction is based on both diversity and federal question and it "it is not immediately clear what law should apply . . . [as] neither the Fifth Circuit nor the United States Supreme Court has yet resolved the issue." *Garza v. Scott and White Memorial Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005).
>
> In some instances, courts "have held that any time federal and state claims are present in the same lawsuit, the federal law of privilege should apply to the entire lawsuit" while others apply "state privilege law to evidentiary materials that are related to pendent state claims, so long as they are unrelated to any federal claims." *Id.* This Court need not reach that issue because the relevant inquiry does not concern a state law claim or defense, but the applicability of a federal statute not requiring analysis of state law. Thus, under either test, federal laws of privilege apply.[15]

Judge Roby reasoned that, because the inquiry concerned the interpretation and applicability of a federal statute, state law was not implicated.[16]

---

[15]Rec. Doc. No. 52, pp. 4-5.

[16]Rec. Doc. No. 52, p. 5 ("[T]he relevant inquiry does not concern a state law claim or defense, but the applicability of a federal statute not requiring analysis of state law."). This Court has not previously addressed alternative federal question grounds for jurisdiction presented by defendant's notice of removal. *See* Rec. Doc. No.

The language in *Garza* that Judge Roby cites refers to confusion in federal jurisprudence where "state law claims appear in federal question cases pursuant to the federal court's supplemental jurisdiction."  234 F.R.D. at 624.  In this case, however, plaintiff has only alleged state law claims.  Applying federal privilege law to the jurisdictional discovery, as Judge Roby ordered, would lead to an awkward result:  the privilege would not be recognized at this early stage of the litigation, yet it might later be raised in conjunction with plaintiff's state law claims. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000), *cited in Garza*, 234 F.R.D. at 625 (noting that "the problems associated with the application of two separate privilege rules in the same case are readily apparent" and applying federal privilege law where case presented both federal and state law claims); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982) ("Obviously applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable.") (citations omitted); *see also Mem. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981).  As noted above, this case does not present a situation in which both federal and state law claims are alleged and where, as noted in *Garza*, some courts have held that state and federal privilege law could co-exist in the same case.

The dispute in this matter concerns the applicability of CAFA and discovery related to that determination.  CAFA is an extension of the district courts' diversity jurisdiction.  *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 571, 125 S. Ct. 2611, 2627, 162 L. Ed. 2d

29, p. 8 n.14.  There, defendant argued in the alternative that the Multi-Forum Multiparty Trial Jurisdiction Act, 28 U.S.C. § 1369, and the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), would provide bases for federal jurisdiction.  Later, however, defendant offered no counterargument to plaintiff's contention in her motion to remand that these statutes were not valid grounds for this Court's jurisdiction.  Defendant confirmed at oral argument that removal was based exclusively on CAFA.  Rec. Doc. No. 56-2, p. 8.  The Court has also considered the thorough reasoning set forth by United States District Judge Fallon in *Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 588-91, *aff'd*, 485 F.3d 804 (5th Cir. 2007) (Fallon, J.) (finding no jurisdiction pursuant to the Multi-Forum Multiparty Trial Jurisdiction Act and the Federal Officer Removal Statute in similar case), and adopts the same.

502 (2005) ("Subject to certain limitations, the CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million."); *Braud v. Transp. Serv. Co.*, 445 F.3d 801, 803 (5th Cir. 2006) ("CAFA broadens diversity jurisdiction for certain qualifying class actions . . . .") (citation omitted).  CAFA conveys federal jurisdiction over class actions when there is minimal diversity,[17] that is, where at least one plaintiff and one defendant are from different states, and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.[18]  While CAFA is a federal statute, it does not alter the nature of plaintiff's state law claims.

The Court finds that jurisdiction in this matter is founded solely on the diversity of the parties pursuant to CAFA.  Because jurisdiction is based on the diversity of the parties, state law will provide the rule of decision in this case.  *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198, 108 S. Ct. 1717, 1720, 100 L. Ed. 2d 178 (1988) ("[S]tate law generally supplies the rules of decision in federal diversity cases . . . .") (citing 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).  Accordingly, Louisiana law will govern the applicable evidentiary privileges.

---

[17]Article III of the United States Constitution permits federal courts to decide cases where only "minimal diversity" exists; the "complete diversity" requirement is statutory.  *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531, 87 S. Ct. 1199, 1203-04, 18 L. Ed. 2d 270 (1967).

[18]The text of § 1332(d)(2) reads:

[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and is a class action in which
(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

7

Applying Louisiana law, the Court finds that the result reached in Judge Roby's order was correct. The Louisiana health care provider-patient privilege provides that, "[i]n a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives." La. Code Evid. art. 501(B)(1). The parties do not contend--and the Court does not find--that any of the enumerated exceptions to the Article 501 privilege apply.[19] La. Rev. Stat. § 13:3715.1, however, provides the exclusive avenue for access to a

---

[19]La. Code Evid. art. 501(B)(2) includes:

Exceptions. There is no privilege under this Article in a noncriminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.
(b) When the communication relates to the health condition of a deceased patient in a wrongful death, survivorship, or worker's compensation proceeding brought or asserted as a consequence of the death or injury of the deceased patient.
(c) When the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which a party deriving his right from the patient relies on the patient's health condition as an element of his claim or defense.
(d) When the communication relates to the health condition of a patient when the patient is a party to a proceeding for custody or visitation of a child and the condition has a substantial bearing on the fitness of the person claiming custody or visitation, or when the patient is a child who is the subject of a custody or visitation proceeding.
(e) When the communication made to the health care provider was intended to assist the patient or another person to commit or plan to commit what the patient knew or reasonably should have known to be a crime or fraud.
(f) When the communication is made in the course of an examination ordered by the court with respect to the health condition of a patient, the fact that the examination was so ordered was made known to the patient prior to the communication, and the communication concerns the particular purpose for which the examination was made, unless the court in its order directing the examination has stated otherwise.
(g) (i) When the communication is made by a patient who is the subject of an interdiction or commitment proceeding to his current health care provider when such patient has failed or refused to submit to an examination by a health care provider appointed by the court regarding issues relating to the interdiction or commitment proceeding, provided that the patient has been advised of such appointment and the consequences of not submitting to the examination.
(ii) Notwithstanding the provisions of Subitem (i) of this Item, in any commitment proceeding, the court-appointed physician may review the medical records of the patient or respondent and testify as to communications therein, but only those which are essential to determine whether the patient is dangerous to himself, dangerous to others, or unable to survive safely in freedom or protect

8

patient's medical records.  This statute provides, in pertinent part, that:

> (1) A health care provider shall disclose records of a patient who is a party to litigation pursuant to a subpoena issued in that litigation, whether for purposes of deposition or for trial and whether issued in a civil, criminal, workers' compensation, or other proceeding, but only if: the health care provider has received an affidavit of the party or the party's attorney at whose request the subpoena has been issued that attests to the fact that such subpoena is for the records of a party to the litigation and that notice of the subpoena has been mailed by registered or certified mail to the patient whose records are sought, or, if represented, to his counsel of record, at least seven days prior to the issuance of the subpoena; and the subpoena is served on the health care provider at least seven days prior to the date on which the records are to be disclosed, and the health care provider has not received a copy of a petition or motion indicating that the patient has taken legal action to restrain the release of the records. If the requesting party is the patient or, if represented, the attorney for the patient, the affidavit shall state that the patient authorizes the release of the records pursuant to the subpoena. No such subpoena shall be issued by any clerk unless the required affidavit is included with the request.
>
> . . . .
>
> (3) Any attorney requesting medical records of a patient who is deceased may obtain the records by subpoena, as provided in Paragraph (1) hereof, by written authorization of the person authorized under Louisiana Civil Code Article 2315.1 or the executor or administrator of the deceased's estate, or by court order, as provided in Paragraph (5) hereof.
>
> . . . .
>
> (5) A court shall issue an order for the production and disclosure of a patient's

---

himself from serious harm.  However, such communications shall not be disclosed unless the patient was informed prior to the communication that such communications are not privileged in any subsequent commitment proceedings.  The court-appointed examination shall be governed by Item B(2)(f).

(h) When the communication is relevant in proceedings held by peer review committees and other disciplinary bodies to determine whether a particular health care provider has deviated from applicable professional standards.

(i) When the communication is one regarding the blood alcohol level or other test for the presence of drugs of a patient and an action for damages for injury, death, or loss has been brought against the patient.

(j) When disclosure of the communication is necessary for the defense of the health care provider in a malpractice action brought by the patient.

(k) When the communication is relevant to proceedings concerning issues of child abuse, elder abuse, or the abuse of disabled or incompetent persons.

(l) When the communication is relevant after the death of a patient, concerning the capacity of the patient to enter into the contract which is the subject matter of the litigation.

(m) When the communication is relevant in an action contesting any testament executed or claimed to have been executed by the patient now deceased.

> records, regardless of whether the patient is a party to the litigation, only:  after a contradictory hearing with the patient, or, if represented, with his counsel of record, or, if deceased, with those persons identified in Paragraph (3) hereof, and after a finding by the court that the release of the requested information is proper; or with consent of the patient.

La. Rev. Stat. § 13.:3725.1(B).

In *Moss v. State*, 925 So. 2d 1185 (La. 2006), the Louisiana Supreme Court determined that, in certain circumstances, the health care provider-privilege in Article 501 would not bar the release of medical records pursuant to § 13:3715.1.  In that case, the plaintiffs filed  a wrongful death action against the state of Louisiana and the state's Department of Transportation and Development ("DTOD"), arguing that a car accident that had killed the plaintiffs' husband and father was caused by a defective condition of the state-owned highway.  *Id.* at 1188.  During discovery, DOTD sought information related to the pre-accident medical condition of Smith, a non-party involved in the accident; Smith's estate refused to authorize the release of these records, and DOTD filed a motion to obtain Smith's medical records pursuant to § 13:3715.1.  The district court denied DOTD's motion, finding that the release of the medical records would not be "proper" pursuant to § 13:3715.1(B)(5) because it would contravene the health care provider-privilege enshrined in Article 510 and because no exception to Article 510 applied.  *Id.* at 1189.  The district court's finding was upheld on appeal on direct appeal by the Louisiana First Circuit Court of Appeal.

While the Louisiana Supreme Court agreed that no exception to the privilege applied and that the privilege-holder had not impliedly or explicitly waived the privilege, *id.* at 1194, the court nonetheless found that Smith's medical records were discoverable pursuant to § 13:3715.1. Discussing the privilege, the *Moss* court noted that the rule was not "a rule of incompetency of

evidence, which serves the end of protecting an adverse party against unreliable or prejudicial testimony"; instead, the privilege "protect[ed] the extrinsic interest of the patient and [was] designed to promote health, not truth." *Id.* at 1193.  Turning then to the interplay between the privilege granted by Article 510 and the disclosure authorized by § 13:3715.1, the court disagreed with the appellate court's conclusion that § 13:3715.1 was controlled by the privilege and that, in the absence of waiver or an applicable exception, the release of medical records could never be "proper" under § 13:3715.1.  Instead, the *Moss* court found that § 13:3715.1 expressly distinguished between release pursuant to Article 510 and its own provisions:  "The exclusive method by which . . . records relating to a person's medical treatment, history, or condition may be obtained or disclosed by a health care provider, shall be pursuant to and in accordance with the provisions of . . . Code of Evidence Article 510, or a lawful subpoena or court order obtained in the following manner . . . ." § 13:3715.1(B).[20]

The court further found that the plain language of the statute provided that when a patient did not authorize disclosure of her records, a court could order the release of medical records after a contradictory hearing to determine if the release would be "proper."  *See* § 13:3715.1(B)(5).  The court noted that the legislature's use of the word "proper" indicated that "courts are vested with some discretion to evaluate, on a case by case basis and according to the particular facts presented, whether the interests of justice would be served by the release of medical records."  *Id.* at 1199.

The *Moss* court provided guidance to courts attempting to determine if disclosure is proper:

_____

[20]Subsection (B) of § 13:3715.1 also provides for disclosure pursuant to La. Rev. Stat. § 40:1299.96, which permits release upon presentation of a written authorization and payment of copying and handling fees.

> In light of the significant policy reasons supporting the legislatively established health care provider-patient privilege and the constitutional dimensions of the privacy expectations protected thereby, the burden is on the party seeking to overcome the privilege to establish the propriety of disclosure.  In light of those same considerations, the privilege should not be subject to casual breach by every litigant in single-minded pursuit of the last piece of evidence which may marginally contribute to his or her case.  There should be a substantial showing of relevance and need, i.e. lack of ability to obtain the evidence elsewhere, by the party seeking disclosure.  Further, any exception to the privilege should be narrowly tailored and should extend only to information necessary and relevant to the condition relied on as a defense or claim.  In other words, it is "proper" to disregard the privilege only to the limited extent necessary to access information which is directly related to determining the truth. . . .
>
> In fashioning a remedy, there are numerous tools available to the courts, including in camera inspections, excising highly personal and/or irrelevant matters, or allowing depositions limited to specific relevant questions.  What is to be avoided is unbridled evaluation of one's complete medical records.

*Id.* at 1201.

Plaintiff is attempting to ascertain details about the patients in question that will elucidate key details regarding this Court's jurisdiction.  This is not, as *Moss* cautioned, a casual breach of the health care provider-patient privilege designed to unearth every "last piece of evidence which may marginally contribute to [plaintiff's] case."  *Moss*, 925 So. 2d at 1201; *see also Preston*, 463 F. Supp. 2d at 592-93 (noting that the defendant medical center held information regarding applicability of CAFA exception and that court had ordered the defendant to produce the information).  In her memoranda and discussions with the Court, plaintiff has made a substantial showing of the relevance of the requested material and of her inability to obtain this information elsewhere.  The Court is convinced that plaintiff has met her burden.

The Court recognizes that the facts in *Moss* are not identical to those presented by the instant dispute.  In *Moss*, the court considered the release of the records of a non-party whose representative was available to contest the release of her medical records.  Here, plaintiff seeks

12

information regarding potential plaintiffs who have not yet been identified and will not be available to assert any privilege prior to disclosure.  These factual discrepancies, however, do not prevent the Court from following *Moss*, although the particular facts of this dispute present a situation that is not directly addressed by the provisions of Article 510, § 3715.1, *Moss*, or any other case that the parties have cited or that the Court has found during its own research.[21]

The identity of the patients is not known to the Court nor plaintiff, who seeks to contact patients for the purpose of potentially vindicating their rights in her proposed class action lawsuit.  Indeed, plaintiff cannot comply with the requirement of § 3715.1(B)(1) that she provide defendant with an affidavit swearing that notice of the subpoena of the medical records has been mailed to the patients whose records are sought.  Nor do these circumstances fit neatly within the requirements of § 3715.1(B)(5), which states that a court shall order production of privileged records only after a hearing where the patient, his counsel, or--if he is deceased--his representative appears.  Here, neither patients nor their counsel or representatives have appeared.[22]  Defendant has asserted the health care provider-patient privilege on the patients'

---

[21]It appears that, pursuant to Louisiana law, the patients' identities and addresses constitute privileged information.  *See Sarphie v. Rowe*, 618 So. 2d 905, 908 (La. App. 1st Cir. 1993) ("[The provisions of Article 510] mean when an individual walks into a doctor's office and opens his mouth, that everything spilling out of it, whether it be his identity or his false teeth (a 'tangible object'), is presumptively privileged and beyond the reach of discovery.").  It is also clear that defendant has standing to assert the health care provider-patient privilege on behalf of its patients.  *See* La. Code Evid. art. 510(D) ("The person who was the physician, psychotherapist, or health care provider or their representatives, at the time of the communication is presumed to have authority to claim the privilege on behalf of the patient or deceased patient."); *Sarphie*, 618 So. 2d at 908.

[22]The Court notes, however, that plaintiff's counsel may owe some duty to putative class members.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.") (citations omitted); *Schick v. Berg*, No. 03-5513, 2004 U.S. Dist. LEXIS 6842, at *19 (S.D.N.Y. Apr. 20, 2004) ("[T]he scope of [class counsel's fiduciary] duties is limited to protecting the substantive legal rights of putative class members that form the basis of the class action suit from prejudice in an action against the class defendant resulting from the actions of class counsel."), *aff'd*, 430 F.3d 112, 117 (2d Cir. 2005).

behalf without providing any proof that the patients have actually acquiesced to this protection.

Despite this unique posture, the Court is certain that disclosure is warranted. By limiting access to this information, defendant is able to prevent plaintiff from contacting the patients and informing them of this litigation. In opposing plaintiff's motion to remand, defendant argued that plaintiff had not produced sufficient information to show that the local controversy exception to CAFA applied.[23] Defendant is now attempting to stymie the very discovery that plaintiff needs to make such a showing. The Court agrees with the reasoning in *Moss* that such an offensive use does not fall within the intended uses of the health care provider-patient privilege. *See Moss*, 925 So. 2d at 1199 ("Obviously, the legislature intended the health care provider-patient privilege to be a shield and not a sword . . . .").

The Court is guided by the *Moss* court's emphasis on the fact-intensive, individual analysis that the privilege requires. In interpreting § 3715.1, *Moss* noted that the statute's construction "reflects . . . a recognition on the part of the legislature that the health care provider-patient privilege, when strictly applied, without the exercise of discretion on the part of the court, can occasionally be unjust, because the effect of such a privilege is to cut off access to information and potentially the truth." 925 So. 2d at 1199. The *Moss* court went on to explain that:

> In enacting [§ 13:3715.1], and in particular Section B(5) thereof, the legislature has entrusted the courts with the duty of determining, in the context of a contradictory hearing, on a case by case basis, according to the unique facts presented, whether disclosure of a non-party's otherwise privileged medical information is "proper" in a particular case in the absence of consent or a waiver. This determination is not, as explained above, confined solely to ascertaining

---

[23]Rec. Doc. No. 7, p. 9 ("The Plaintiff offers no evidentiary support whatsoever for the suggestion that over two-thirds of the members of the putative class are residents of Louisiana. Hence, the Plaintiff has failed to carry her burden of proving the elements of 28 U.S.C. § 1332(d)(4) are met.").

whether a statutory exception to the privilege exists.

925 So. 2d 1185, 1199-200 (La. 2006).

In the contradictory hearings conducted by this Court and Judge Roby in connection with the parties' relevant motions, plaintiff and defendant have adequately explored the factual and legal issues related to this disclosure. Releasing this information presents a *de minimis* intrusion into the patients' privacy, which is offset by the potential benefit that plaintiff's lawsuit may provide. In addition, the protective order that will govern this discovery ensures that the patients' identity will remain closely guarded.

Prior to these rulings, counsel for both parties attempted to resolve their differences regarding this motion, and they reached a tentative agreement in which defendant would release certain patient information subject to a protective order. Defendant, however, ultimately refused to consent to this release because of concerns related to the health care provider-patient privilege. The Court finds that the proposed protective order is narrowly tailored to respect the privacy concerns of the patients while designed to deliver the information required to determine jurisdiction.

Accordingly,

**IT IS ORDERED** that the motion to set aside a ruling of the United States Magistrate Judge requiring the production of privileged information filed on behalf of defendant, Lafon Nursing Facility of the Holy Family, Inc.,[24] is **DENIED**. While Judge Roby's reasoning contained some legal error, the Court finds that the information requested by plaintiff is discoverable pursuant to La. Rev. Stat. § 13:3715.1 and *Moss v. State*, 925 So. 2d 1185 (La.

---

[24]Rec. Doc. No. 56.

2006).

   **IT IS FURTHER ORDERED** that, pursuant to this Court's supervisory authority as detailed in 28 U.S.C. § 636, defendant will release information regarding potential class members pursuant to the parties' proposed protective order.  **Any disputes with regard to the protective order shall be determined by this Court**.

   New Orleans, Louisiana, July ____31st____, 2007.


_____
        **LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

16