UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHERYL MARTIN                                                    CIVIL ACTION

VERSUS                                                          No.  06-5108

LAFON NURSING FACILITY OF THE                                  SECTION:  I/4
HOLY FAMILY, INC.


ORDER AND REASONS

Before the Court is a motion to remand filed by plaintiff, Cheryl Martin, individually and

on behalf of her deceased mother, Ida Antoine, and on behalf of all others similarly situated.[1]

Defendant in this matter is Lafon Nursing Facility of the Holy Family, Inc. ("Lafon").  For the

following reasons, plaintiff's motion to remand is **GRANTED**.


*BACKGROUND*

Defendant is the owner and operator of a nursing home located in New Orleans,

Louisiana.[2]  Plaintiff alleges that when Hurricane Katrina made landfall in New Orleans on

August 29, 2005, defendant failed to take the necessary precautions to protect plaintiff's mother

_____

[1] R. Doc. No. 127.

[2] R. Doc. No. 1-2, state ct. pet. ¶ 3.

and other residents of the home from the storm's effects.[3]  Plaintiff contends that, because of

defendant's negligence, her mother suffered mentally and physically during the storm and died

on defendant's premises.[4]

Plaintiff filed this action in state court seeking damages for defendant's negligence and

survival and wrongful death damages pursuant to La. Civil Code Ann. articles 2315.1 and

2315.2.[5]  Plaintiff also requested that the matter be certified as a class action.[6]  Plaintiff's petition

defines the class as:

> All persons, except Defendants' employees, who sustained injury and/or
> damage, including but not limited to, personal injury or wrongful death, as a result
> of unreasonable dangerous conditions and/or defects in and/or on the premises of
> LAFON on or about August 29, 2005, and/or as a result of the failure of LAFON
> to attain, maintain, and/or provide an adequate means of transportation to timely
> and/or safely move persons off its premises in the wake of Hurricane Katrina, and
> the failure of LAFON to provide adequate medical care in the wake of Hurricane
> Katrina.[7]

On August 28, 2006, defendant removed this case to federal court arguing that federal

jurisdiction exists pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)

(2006), the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), and the Multiparty,

Multiforum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. § 1369.  On September 27, 2006,

plaintiff filed a motion to remand,[8] which this Court denied, the Court stating that "[p]laintiff is

free to move for remand if and when the appropriate information relevant to subject matter

---

[3] *Id.* ¶¶ 6-13.

[4] *Id.* ¶ 11.

[5] *Id.* ¶¶ 8-19.

[6] *Id.* ¶ 20.

[7] *Id.* ¶ 21.

[8] R. Doc. No. 3.

2

jurisdiction becomes available."[9]

On December 14, 2007, following the mailing and receipt of questionnaires to the putative class, plaintiff filed this motion to remand arguing that the home state and local controversy exceptions to CAFA apply and, therefore, jurisdiction is lacking.[10]  Plaintiff alternatively argues that, pursuant to 28 U.S.C. § 1332(d)(3), the Court should, in its discretionary capacity, decline to exercise subject matter jurisdiction.[11]

Defendant argues that, because plaintiff overstated the true amount of Louisiana domiciliaries comprising the putative class, plaintiff has failed to meet her burden of proving that the CAFA exceptions apply.[12]  Defendant contends that plaintiff overstated the number of Louisiana domiciliaries by:  (1) including persons who are not putative class members, (2) employing language on the questionnaire that deviates from the standard for determining domicile, and (3) utilizing a process that was skewed toward receiving more responses from Louisiana domiciliaries than from domiciliaries from other states.[13]  Defendant further contends that plaintiff is barred from urging that this Court should exercise its discretion pursuant to §

---

[9] R. Doc. No. 29, order of January 18, 2007.

[10] R. Doc. No. 127-2, mem. supp. mot. remand at 2-3.  Defendant has not argued, in response to this motion to remand or in response to the first motion to remand, that jurisdiction exists pursuant to the MMTJA or the Federal Officer Removal Statute (although defendant listed these as alternative bases of jurisdiction in its notice of removal). R. Doc. No. 1, notice of removal ¶ 9; R. Doc. No. 7, mem. opp'n to first mot. remand at 3 n.5; R. Doc. No. 133, mem. opp'n to second mot. remand.  A defendant attempting to establish removal when challenged by a plaintiff seeking remand bears the burden of proof.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144, 148 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden.").  Because defendant has not argued that jurisdiction exists pursuant to these alternative bases, the Court will not consider them.

[11] Mem. supp. at 5-7.

[12] Mem. opp'n.

[13] *Id.* at 6-13.

1332(d)(3) because plaintiff failed to preserve this argument.[14]

## *LAW AND ANALYSIS*

## I.  Standard of Law

*The Class Action Fairness Act*

A district court must remand a case to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c); *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.* (*Preston II*), 485 F.3d 804, 813 n.3 (5th Cir. 2007).  The party seeking remand has the burden of proving that a CAFA exception to the exercise of federal jurisdiction exists, thereby divesting the court of subject matter jurisdiction pursuant to § 1332(d).  *Preston I*, 485 F.3d at 797; *Frazier v. Pioneer Ams., LLC*, 455 F.3d 542, 546 (5th Cir. 2006). "[T]he party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence."  *Preston I*, 485 F.3d at 797.  Citizenship, for purposes of proving an exception to CAFA, must be shown on the date the complaint was filed.[15]  28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint . . . ."); *Preston I*, 485 F.3d at 798.

28 U.S.C. § 1332(d)(2) conveys federal jurisdiction over class actions when there is minimal diversity,[16] that is, where at least one plaintiff and one defendant are from different

---

[14] *Id.* at 13-16.

[15] Plaintiff filed her petition in state court on July 20, 2006.  Notice of removal ¶ 2.

[16] Article III of the United States Constitution permits federal courts to decide cases where only "minimal diversity" exists; the "complete diversity" requirement is statutory.  *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 531 & n.7, 87 S. Ct. 1199, 1203-04 & n.7, 18 L. Ed. 2d 270, 275 & n.7 (1967).

states, and the amount in controversy exceeds $5,000,000, exclusive of interests and costs.[17]

Excepted from the § 1332(d) grant of jurisdiction are those cases that are purely local

controversies.  Pursuant to the local controversy exception,[18] a district court must decline to

exercise jurisdiction in cases where four requirements are met:

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens
> of the original filing state; (2) at least one defendant is a defendant from whom
> members of the proposed plaintiff class seek significant relief, whose alleged
> conduct forms a significant basis of the asserted claims, and who is a citizen of the
> original filing state; (3) the principal injuries were incurred in the original filing
> state; and (4) no other class action asserting the same or similar factual allegations
> has been filed against any of the defendants within the three years preceding the
> filing of the case.

*Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006) (*citing* 28 U.S.C. §

1332(d)(4)(A)); *see Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.* (*Preston I*), 485 F.3d 793,

---

[17] The text of § 1332(d)(2) reads:
> The district courts shall have original jurisdiction of any civil action in
> which the matter in controversy exceeds the sum or value of $5,000,000, exclusive
> of interest and costs, and is a class action in which–
>> (A) any member of a class of plaintiffs is a citizen of a State different from
>> any defendant;
>> (B) any member of a class of plaintiffs is a foreign state or a citizen or
>> subject of a foreign state and any defendant is a citizen of a State; or
>> (C) any member of a class of plaintiffs is a citizen of a State and any
>> defendant is a foreign state or a citizen or subject of a foreign state.

[18] The local controversy exception, § 1332 (d)(4)(A), provides:
> A district court shall decline to exercise jurisdiction under paragraph (2)–
>> (A)(i) over a class action in which–
>>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the
>>> aggregate are citizens of the State in which the action was originally filed;
>>> (II) at least 1 defendant is a defendant–
>>>> (aa) from whom significant relief is sought by members of the plaintiff
>>>> class;
>>>> (bb) whose alleged conduct forms a significant basis for the claims
>>>> asserted by the proposed plaintiff class; and
>>>> (cc) who is a citizen of the State in which the action was originally
>>>> filed; and
>>> (III) principal injuries resulting from the alleged conduct or any related conduct
>>> of each defendant were incurred in the State in which the action was originally
>>> filed; and
>> (ii) during the 3-year period preceding the filing of that class action, no other class action
>> has been filed asserting the same or similar factual allegations against any of the
>> defendants on behalf of the same or other persons . . . .

797 (5th Cir. 2007).

A district court also must decline jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(B), *i.e.*, the home state exception. This exception provides an alternative, but similar, exception to the federal jurisdictional grant of § 1332(d) where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

## II. Analysis

*A.    Local Controversy and Home State Exceptions*

In its notice of removal, defendant states that the matter in controversy exceeds the sum or value of $5,000,000 and that minimal diversity exists, satisfying the requirements for federal jurisdiction under CAFA.[19]  Plaintiff does not contest these assertions; instead, plaintiff argues that this matter falls within the local controversy and home state exceptions to CAFA, presenting a situation in which the Court must decline to exercise jurisdiction.[20]  The controversy with respect to these exceptions lies in determining whether two-thirds of the proposed class members are Louisiana citizens; defendant contests no other aspect of plaintiff's argument regarding the applicability of CAFA's local controversy and home state exceptions.[21]

In determining citizenship for purposes of jurisdiction, the term citizenship is

---

[19] Notice of removal ¶¶ 6-8.

[20] Mem. supp. at 2-5.

[21] It is uncontested that plaintiff seeks significant relief from defendant, defendant's conduct forms a significant basis for the claims, and that defendant is a primary defendant and a Louisiana citizen.  It is also uncontested that the principal injuries resulting from the alleged conduct were incurred in Louisiana.

synonymous with domicile.  *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).[22]  A person

"acquires a 'domicile of origin' at birth, and this domicile presumptively continues unless

rebutted with sufficient evidence of change."  *Preston II*, 485 F.3d at 814 (*citing Acridge v.*

*Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003)).  "A change in

domicile requires only the concurrence of:  (1) physical presence at the new location and (2) an

intention to remain there indefinitely . . . ."[23]  *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996).

Plaintiff contends that two-thirds of the proposed class are citizens of Louisiana.  In

support of this contention, plaintiff provides the Court with questionnaires completed by putative

class members.[24]  Of the sixty-eight responses received by putative class members,[25] fifty-three

---

[22] *Stine* outlines the citizenship determination for jurisdictional purposes:

> With respect to the diversity jurisdiction of the federal courts, citizenship has the same meaning as domicile.  It imports permanent residence in a particular state with the intention of remaining, and is not dependent on birth.  Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile; and citizenship is not necessarily lost by protected absence from home, where the intention to return remains.  Mere mental fixing of citizenship is not sufficient.  What is another man's mind must be determined by what he does as well as by what he says.
> Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile.

*Stine*, 213 F.2d at 448 (citation omitted).

[23] The United States Court of Appeals for the Fifth Circuit has explained:

> [I]t is elementary that, to effect a change of one's legal domicile, two things are indispensable:  First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be animus to change the prior domicile for another. Until the new one is acquired, the old one remains. . . .  When challenged as here, the burden rested on him [the plaintiff] to show by a preponderance of the evidence that he was a citizen of that State.

*Preston II*, 485 F.3d at 814 (*quoting Welsh v. Am. Sur. Co. of N.Y.*, 186 F.2d 16, 17 (5th Cir. 1951)).

[24] Mem. supp., ex. A, summary of questionnaire responses and completed questionnaires.  Plaintiff also informs the Court of the domicile of persons who are already represented by counsel.  Mem. supp. at 4.  Defendant argues that plaintiff should not be able to utilize Louisiana domiciliaries who are already represented by counsel and, therefore, are not members of the putative class.  Mem. opp'n at 7-8.

The Court need not decide whether individuals who have already filed a lawsuit can be considered putative class members for purposes of 28 U.S.C. § 1332(d)(4) because, without considering this subsection of the potential

individuals[26] appear to be Louisiana citizens, *i.e.*, seventy-eight percent of the responses received.[27]

In opposition, defendant first argues that plaintiff improperly counts as Louisiana domiciliaries those persons who should not be part of the putative class because "they have no right of action," pursuant to Louisiana Civil Code articles 2315.1 and 2315.2,[28] which enumerate categories of beneficiaries who may bring wrongful death and survival actions.[29]  Specifically, the individuals about whom defendant complains are nieces, in-laws, and persons of unknown

---

class, the Court finds that two-thirds of the putative class members are Louisiana citizens.

[25] The number of questionnaires submitted to the Court was seventy-one.  However, three of the responses (submitted by L.C., O.P., and Y.E.) indicated that those individuals did not want to be involved in the class action and, therefore, those individuals are not counted as putative class members.

[26] The Court did not count the following individuals as Louisiana domiciliaries:  (1) J.H. because she appears to be a domiciliary of Illinois; (2) J.J. because she is living in California and, although she returned to check on her property, she did not indicate that her intent was to return to Louisiana permanently; (3) J.M. because she appears to be a citizen of Georgia; (4) C.D. because she appears to be a California citizen; (5) C.R. because he resides in California and does not intend to return to Louisiana; (6) A.B. because she resides in New York and does not intend on returning to Louisiana; (7) W.C. because she resides in Texas and answered "not applicable" to whether she intended on returning to Louisiana; (8) M.C. because her current address is in Georgia and she does not intend on returning to Louisiana; (9) H.D. because she currently resides in Alabama and may not intend on returning; (10) H.D. because the questionnaire was not completed on behalf of the putative class member; (11) M.G. because the questionnaire was not completed on behalf of the putative class member; (12) L.G. because his current address is in Mississippi and he answered "not applicable" to whether he intended on returning to Louisiana; (13) K.J. because the questionnaire was not completed on behalf of the putative class member; (14) A.S. because he lives in Tennessee and he does not intend to return to Louisiana; (15) M.S. because she resides in Florida and cannot return to Louisiana due to her age.

[27] Mem. supp., ex. A, summary of questionnaire responses and completed questionnaires.  The Court conducted its own analysis of the questionnaire responses rather than relying on the summary of responses presented by the parties.

[28] Articles 2315.1 and 2315.2 provide that a survival or wrongful death action may be brought by:  (1) the surviving spouse and child or children, (2) the surviving father and mother, (3) the surviving brothers and sisters, and (4) the surviving grandfathers and grandmothers.  La. Civil Code Ann. arts. 2315.1 & 2315.2 (1997).

[29] Mem. opp'n at 7-8.

8

relationship.[30]  However, even assuming that these sixteen individuals[31] were not part of the

putative class,[32] over two-thirds, *i.e.*, thirty-nine of fifty-two, approximately seventy-five

percent,[33] of the putative class members were Louisiana citizens at the time of filing.

In its second argument, defendant contends that plaintiff "craft[ed] questions that would

elicit favorable responses for her argument."[34]  Defendant's argument is not persuasive.

---

[30] *Id.* at 8; mem. opp'n, ex. C, list of nieces, daughter-in-law, and persons of unknown relationship.

[31] Defendant complains of seventeen individuals in total.  However, defendant's complaint regarding one person, L.S., is without merit because she was not counted as either a Louisiana citizen or as a putative class member.  Mem. opp'n ex. C, #2.

[32] Nieces and in-laws are not automatically barred from recovering pursuant to articles 2315.1 and 2315.2; these individuals are entitled to recover if the cause of action accrues in one of the enumerated beneficiaries and the niece or in-law inherits the right to recover from the beneficiary.  *See, e.g.*, *Jackson v. Estate of Jones*, 887 So. 2d 618, 621-22 (La. Ct. App. 2004) (holding that the nieces and nephews were not entitled to bring the wrongful death action because "'it is only when the codal beneficiary who *survives* the decedent later dies that the beneficiary's heir "inherits" the beneficiary's right to bring' the wrongful death action" (*quoting Rachal v. Peters*, 680 So. 2d 1280, 1283 (La. 1996)); *Walker v. St. Paul Ins. Cos.*, 339 So. 2d 441, 448 (La. Ct. App. 1977) (holding that a mother-and father-in law could recover for the death of their daughter-in-law because their son survived his wife and the in-laws inherited their son's right to recover upon his death).  The Court is not presented with enough evidence to determine whether or not the complained-of nieces and daughter-in-law are entitled to recover.  Further, because the Court is not presented with evidence of the relationship of some of the individuals to the decedents, it cannot determine whether these persons have a cause of action.

[33] The number of putative class members as a whole is arrived at by subtracting the 16 individuals that the defendant argues are not class members from the amount of questionnaires completed by putative class members, *i.e.*, 68-16, or 52 putative class members.
    In order to determine the number of Louisiana citizens, the Court then subtracted 14 from the number of questionnaires completed by Louisiana citizens, *i.e.*, 53-14, or 39.  The Court only subtracted 14 from the number of Louisiana citizens, as opposed to the 16 individuals about which defendant complains, because 2 of the 16 persons are not part of the 53 individuals the Court counts as Louisiana citizens.  Specifically, the nieces named in numbers 8 and 16 were never counted as Louisiana citizens.  Mem. opp'n, ex. C.

[34] Mem. opp'n at 8.  Specifically, the questionnaire asks:
    1.  What was your home address before Hurricanes Katrina and Rita?
    2.  What is your current address?
    3.  Were you forced to evacuate Louisiana because of either Hurricane Katrina or Hurricane Rita?
    **Yes/No**
    4. If you were forced to evacuate Louisiana, had you returned to the State of Louisiana on or before July 20, 2006?
    **Yes/No**
    5.  If you had not yet returned to Louisiana as of July 20, 2006, did you intend to return to Louisiana when conditions permitted?
    **Yes/No/Not Applicable**

First, the questionnaire was submitted as an exhibit to the protective order entered in the case.[35]  Any objections to the wording of the final questionnaire should have been noted at that time.  Second, defendant contends that the questions should have contained language asking whether the person had a "present intention" to remain at his or her current address.[36]  As the United States Court of Appeals for the Fifth Circuit has recently pronounced:  "[C]itizenship requires residency and *the intent to return or remain* in the state."  *Preston II*, 485 F.3d at 815 (emphasis added).  Citizenship, as previously stated, is determined as of the date that the complaint was filed.  Therefore, a question inquiring whether a person intended to return to Louisiana when conditions permitted is relevant when analyzing whether the second citizenship requirement is present.[37]

Although statements of intent are subjective, the Court "gives little weight to statements of intent evidence . . . only when the subjective evidence conflicts with the objective facts in the

---

R. Doc. No. 92, protective order, ex. B, sample questionnaire.

[35] Protective order, ex. B.

[36] Mem. opp'n at 9.

[37] The Court notes that defendant's reliance on two words, *i.e.*, present intention, used in a Supreme Judicial Court of Maine decision from 1857 is misplaced.  First, the present intention language is taken out of context; the words come from two paragraphs explaining a determination of a person's residence.  The paragraphs state in full:

> Residence in a given place does not necessarily involve continued personal presence in that place.  A person may be temporarily absent, and remain from home, without a change of residence.
>
> When, however, a person voluntarily takes up his abode in a given place, with intention to remain permanently, or for an indefinite period of time; or, to speak more accurately, when a person takes up his abode in a given place, without any present intention to remove therefrom, such place of abode becomes his residence or home, and will continue to be his residence or home, notwithstanding temporary personal absences, until he shall depart with intention to abandon such home.

*Inhabitants of Warren v. Inhabitants of Thomaston*, 43 Me. 406 (1857) (citation omitted).

The situation described in the *Warren* case is that of a person who "voluntarily takes up his abode" without a present intention of returning.  The *Warren* case is not directed to a situation where a person is forced to evacuate to a different location.

record." *Id.* at 816 (emphasis added). Defendant has not provided any evidence indicating that the questionnaires misrepresent the putative class members' intent and defendant has not argued that the questionnaire responses are not authentic.[38]

Defendant's final argument is that the process employed by plaintiff in obtaining questionnaire responses was "unfairly skewed toward receiving responses only from persons in Louisiana."[39] Specifically, defendant states that because the United States Postal Service "has long since stopped forwarding mail to those persons who have not rebuilt their homes or returned to the area . . . , a person who returned to Louisiana has a greater likelihood of receiving the questionnaire than a person who moves out of state after the storm and who has not returned."[40]

The Fifth Circuit recently articulated and noted that the circumstances surrounding Hurricane Katrina require an evidentiary standard based upon practicality and reasonableness. *Preston II*, 485 F.3d at 816. The plaintiff in *Preston* represented "a putative class of patients and the relatives of deceased and allegedly injured patients hospitalized at [defendant hospital] when Hurricane Katrina made landfall in New Orleans, Louisiana." *Id.* at 808. The Court of Appeals

---

[38] Several of defendant's concerns involve persons the Court has not counted as Louisiana citizens. *See* mem. opp'n, exs. D, E, F. Specifically, of the five responses defendant points to as evidence that the language is contradictory and unreliable, the Court has not counted three of those individuals as Louisiana domiciliaries. The Court did not count L.C. as a Louisiana domiciliary or as a putative class member because she requested not to be involved with the class action. Mem. opp'n, ex. D. The Court did not count G.R. as a Louisiana citizen because it was unclear whether she was answering the questionnaire on behalf of the putative class member. *Id.* ex. E. The Court did not count J.J. because she is living in California and, although she returned to check on her property, she did not indicate that her intent was to return to Louisiana permanently. *Id.* ex. F. The Court does not find the other two questionnaires misleading. The R.D. questionnaire listed a Georgia address, but noted that he had intent to return to Louisiana and would be returning to Louisiana in November of 2007. *Id.* ex. G. The Y.S. questionnaire is also not ambiguous. The fact that medical problems may have prevented Y.S. from returning does not negate the fact that she intended to return when able. *Id.* ex. H.

[39] Mem. opp'n at 11-12.

[40] *Id.* at 11.

held that, due to the circumstances of Hurricane Katrina, plaintiff's submission of eight affidavits regarding the intent of potential class members to return to New Orleans, emergency contact phone numbers of deceased patients, and the medical records data gathered, "permitted the district court to make a reasonable assumption that at least one-third of the class members were citizens of Louisiana during the relevant time period." *Id.* at 817.

Similarly, in this case, the completed questionnaires evidence that two-thirds of the putative class members are Louisiana domiciliaries. The fact that not all potential class members responded does not mean that the Court cannot make this preliminary jurisdictional determination;[41] the Court may reasonably assume that these responses are representative of the class as a whole. *See id.* ("The sheer magnitude of this shared catalyst[, *i.e.*, Hurricane Katrina] formed an adequate backdrop for the district court's extrapolation that the reasons offered by the affiants for not immediately returning home . . . were probably representative of many other proposed class members.").

Although not all of the questionnaires were returned, the ones received "in conjunction with the residency information gleaned from the emergency contact data of the deceased patients[42] [gives] the [Court] a reasonable indication as to the citizenship of these unaccounted

---

[41] The Fifth Circuit also addressed this issue fully in *Preston II*:

> This suggestion [that a district judge must determine the domicile of every class member] . . . suggests that at this threshold stage of the case, the district court must engage in the arduous task of examining the domicile of every proposed class member before ruling on the citizenship requirement. We decline to adopt such a heightened burden of proof considering the far greater number of plaintiffs involved in a class action as compared to the traditional diversity case. From a practical standpoint, class action lawsuits may become "totally unworkable in a diversity case if the citizenship of all members of the class, many of them unknown, had to be considered."

485 F.3d at 816 (*quoting* Charles Alan Wright, Law of Federal Courts § 72, at 521 (5th ed. 1994)).

[42] There is no contention that the "lion's share" of the addresses of the deceased's potential heirs, which were provided by defendant to plaintiff, were Louisiana addresses.

for persons." *Id.* at 818.  The Fifth Circuit has stated:

> The law of continuing domicile gains special significance in light of the natural disaster forming the basis of this appeal.
>
> We agree with the notion that the damage and destruction wrought by Hurricane Katrina warrants the court's interpretation of common-sense as part of the calculus in determining the citizenship of the class members.  While cognizant that the patient addresses provided by [defendant] do not definitively reflect the patients' domicile at the time of filing suit, as required under traditional diversity standards, we also consider the common genesis of the historically unprecedented exodus from New Orleans in our assessment of the citizenship issue.  In light of the vast post-Katrina diaspora and the undisputably slow revitalization in part of New Orleans, it is unreasonable to demand precise empirical evidence of citizenship in a class action lawsuit filed less than sixty days after the hurricane and related flooding.  Many Hurricane Katrina victims may intend to return home yet are still dispersed throughout Louisiana and other states for reasons beyond their control .
> . . .

*Id.* at 819.

The Court finds that plaintiff has, by a preponderance of the evidence, demonstrated that two-thirds of the potential class members are Louisiana citizens.[43]  As the only contested requirement of the local controversy and home state exceptions to CAFA's grant of jurisdiction is class member citizenship, the Court finds that it lacks jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A) & (B).

B.      *CAFA's Discretionary Exception*

Furthermore, the Court believes that this case, even assuming that greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the defendant are citizens of Louisiana, is an appropriate one to exercise discretionary authority and decline jurisdiction pursuant to 28 U.S.C. § 1332(d)(3).  Section 1332(d)(3) states:

---

[43] If, at later date, evidence becomes available to show that the requisite amount of class members are not Louisiana citizens, defendant may remove the lawsuit at that time.  *See id.* at 820 ("[CAFA] compensates for the inability to conduct an in-depth fact finding mission by permitting defendants to remove the case to federal court at any point in the litigation." (*citing* 28 U.S.C. § 1453(b)).

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of–
>
> > (A) whether the claims asserted involve matters of national or interstate interest;
> > (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> > (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> > (D) whether the class action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> > (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> > (F) whether, during the 3-year period preceding the filing of that class action, 1 or more class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

Applying the above factors to this case, the claims asserted are against a Louisiana business for its alleged actions during a natural disaster which uniquely affected New Orleans.  This lawsuit does not involve matters of national or interstate interest as contemplated under the statute.  *See id.* at 822 (holding that the claims did not involve national or interstate interest because the "class action involves two Louisiana businesses operating a local hospital during a natural disaster destroying New Orleans").

Second, the claims asserted in this class action involve state law negligence, wrongful death, and survival claims pursuant to Louisiana Civil Code Ann. articles 2315.1 and 2315.2. Defendant has not argued that a claim pursuant to federal law exists in this case or that plaintiff intentionally plead the matter in order to avoid federal jurisdiction.

The conduct that forms the basis of the claims occurred at a Louisiana business during and immediately following Hurricane Katrina, allegedly leading to the injuries and deaths of several of defendant's residents.  Defendant is a Louisiana corporation with its principal place of

business in New Orleans, Louisiana.  Therefore, a distinct nexus exists between the forum of Louisiana and the class members, the alleged harm, and the defendant.

It appears that at least one-third of the class members are Louisiana citizens.  There is no other state in which a large number of putative class members resides.  Therefore, the number of Louisiana citizens is substantially larger than the number of citizens from any other state and that the citizenship of the other class members is dispersed among a substantial number of other states.[44]

Finally, the Court finds no evidence of a class action being filed within the three years preceding the filing of this class action petition and neither party addresses the issue.[45]

The Court also notes that, as in *Preston II*, this case "symbolizes a quintessential example of Congress' intent to carve-out exceptions to CAFA's expansive grant of federal jurisdiction when our courts confront a truly localized controversy."  *See id.* at 823.  Therefore, based upon the facts of this case, the Court is not only mandated to decline jurisdiction pursuant to § 1332(d)(4)(A) and (B), but it also chooses to exercise its discretion to decline jurisdiction pursuant to § 1332(d)(3).

Accordingly,

**IT IS ORDERED** that the motion to remand filed by plaintiff, Cheryl Martin,

---

[44] Looking to the questionnaires presented to the Court, as mentioned above, over two-thirds of the people who responded are Louisiana citizens.  Further, of the non-Louisiana citizens who responded, the putative class members are citizens of Alabama, California, Florida, Georgia, Illinois, Mississippi, New York, Tennessee, and Texas.

[45] Defendant's argument that plaintiff has waived her right to seek a remand pursuant to CAFA's discretionary exception is without merit because the Court may, *sua sponte*, review its jurisdiction at any time.  The Fifth Circuit noted that the district court did not need to give notice of its decision to remand pursuant to the discretionary jurisdiction provision of CAFA because it is "a bedrock principle of federal jurisdiction [that] a court may sua sponte review whether subject matter jurisdiction exists in a case."  *Id.* at 812 n.2.

individually and on behalf of her deceased mother, Ida Antoine, and on behalf of all others

similarly situated,[46] is **GRANTED** and this action is **REMANDED** to the Civil District Court for

the Parish of Orleans.

New Orleans, Louisiana, February 27, 2008.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[46] R. Doc. No. 127.